OPINION
{¶ 1} Rita Shirk, the maternal grandmother of Shyanna Huffer, is appealing the award of custody by the trial court of Shyanna to foster parents Monte and Bethla Crawford who petitioned for legal custody of Shyanna. Shyanna had been placed with the Crawfords three days after she was born (Tr. 29), but when she was one year old, she was removed from the Crawfords and placed with Rita Shirk on June 1, 2002. (Tr. 64). The facts and the conclusions and findings of the Juvenile Court of Clark County, Ohio, are carefully set forth in the following judgment entry filed by that court:
 {¶ 2} "This matter came before the Court upon the competing motions for legal custody of the child filed by foster parents and paternal grandmother.
 {¶ 3} "THE COURT FINDS that the dependent child, Shyanna Huffer, was born on May 11, 2001. Previously, the child has been in the custody of the Clark County Department of Job and Family Services pursuant to both a shelter care and a temporary custody order.
 {¶ 4} "Subsequently, and before trial, the foster parents, Monte and Bethla Crawford, filed a motion for legal custody of the child pursuant to Revised Code Section 2151.353. The paternal grandmother, Rita Shirk, also filed a motion for legal custody pursuant to the same statute.
 {¶ 5} "A dispositional hearing was held in this matter at which time the foster parents were present with counsel, the maternal grandmother was present with counsel, the mother was present with counsel and the Guardian ad Litem was present.
 {¶ 6} "THE COURT FINDS that the Department of Job and Family Services offered no evidence and indicated that the child should not be placed with either parent, but that an award of legal custody to either the foster parents or the paternal grandmother would meet the needs of the child.
 {¶ 7} "THE COURT FURTHER FINDS that the father of the child is incarcerated and is unable to meet the needs of the child at this time. The mother, with the advice and consent of counsel, acknowledged that she was unable to provide for the needs of the child. The mother acknowledged that she could not meet the needs of Shyanna now or at any time in the reasonable future and that placement of the child with another legal custodian would be in the best interest of the child. The mother recommended that the child be placed in the legal custody of the paternal grandmother.
 {¶ 8} "THE COURT FINDS that the petitions for legal custody by the paternal grandmother and the foster parents both require a best interest determination pursuant to Revised Code Section 3109.04. The Court must consider the factors set forth in that section of the code in making an award of legal custody to a non-parent. It would be inappropriate to place the dependent child with either parent when both are unable to provide for the needs of the child, hence this proceeding and this decision.
 {¶ 9} "THE COURT FINDS the paternal grandmother is unmarried and resides in a rented home with three grandchildren. She subsists on government aid in various forms. Three of her four children have been incarcerated at some time during their lives. Ms. Shirk, the paternal grandmother, acknowledged that for a brief period of time her four children were removed from her and placed in the custody of Children's Services. The grandmother receives no support from either the mother or the father. The grandmother's health is a bit precarious and her stability is questionable.
 {¶ 10} "THE COURT FINDS the foster parents are good, decent and appropriate. They have proper facilities in their home, proper income to support the child and offer a loving and stable home for the child. During the year that the child was in the foster parents' home, she bonded with the foster parents and their extended family. The child blossomed, grew and had her every need met.
 {¶ 11} "THE COURT FINDS that the wishes of the parents are not significant factors regarding the care of this child. The father is in prison. The mother is still a minor and has again given birth to another child before reaching the age of majority. She has no particular interest or involvement in the well being of Shyanna.
 {¶ 12} "THE COURT FINDS the wishes of the child cannot be stated because of her age. The Guardian ad Litem on behalf of the child recommended that the child be placed with the paternal grandmother, but admitted he hardly knew the Crawfords and had never been to their home.
 {¶ 13} "The child interacts appropriately with the foster parents and their extended family. The child has developed a significant attachment to and bond with the natural-born children of the foster parents. Conversely, the child has not developed the same relationship with the other children in the home of the paternal grandmother.
 {¶ 14} "The child is well adjusted in the home and community and extended family of the foster parents. The child lived there for most of her life. She is well adjusted to all that was offered to her through the foster parents' care of her. The paternal grandmother's home is more convoluted and full of consternation.
 {¶ 15} "The foster parents are mentally and physically healthy and stable and caring. The paternal grandmother's health is precarious, her supervisory skills are questionable and her past record of parenting is abysmal.
 {¶ 16} "The foster parents and the paternal grandmother both seem likely to honor and facilitate court-approved visitation. There is a strain between the foster parents and the paternal grandmother simply because all desire to provide a home for the child. Yet, the Court is convinced that the foster parents would make the greater effort to facilitate visitation.
 {¶ 17} "THE COURT FINDS that neither of the petitioners is obligated to support the child, but both have offered to do so. The foster parents have a better and more stable source of income to meet the needs of the child. The grandmother depends upon assistance of others to meet her needs and the needs of the child.
 {¶ 18} "The foster parents have not been convicted of or plead guilty to any criminal offense involving the well being of a child. On the other hand, the paternal grandmother was convicted of an offense of child neglect or abuse in the past.
 {¶ 19} "Neither petitioner proposes to leave the area or to deviate from the dictates of the Court.
 {¶ 20} "THE COURT FINDS that the paternal grandmother's home is much less stable, much less secure and much less healthy than that of the foster parents. The child has the best chance of succeeding and growing and maturing in life if she is placed in the legal custody of the foster parents subject to appropriate visitation and support orders.
 {¶ 21} "THE COURT FINALLY FINDS that it is in the best interest of the child to be placed in the legal custody of Monte Crawford and Bethla Crawford until further order of the Court.
 {¶ 22} "IT IS THEREFORE ORDERED that the child is placed in the legal custody of Monte Crawford and Bethla Crawford. The Court specifically reserves the rights of the natural parents to return to the court to modify this award of custody and further reserves to the parents the right to consent to adoption and the obligation to support the child.
 {¶ 23} "IT IS FURTHER ORDERED that the motion of Monte Crawford and Bethla Crawford, to be granted legal custody of the child is granted and the competing motion of the paternal grandmother, Rita Shirk, to be granted legal custody of the child is denied.
 {¶ 24} "IT IS FURTHER ORDERED that the mother shall be entitled to supervised visitation with the child every other Saturday or Sunday as agreed to by the mother and the legal custodians. The visitation shall be from 9:00 a.m. until 4:00 p.m. on either a Saturday or Sunday, every other weekend, as arranged by mother and the custodians. If those parties are unable to agree to a visitation schedule, the same shall be adopted by the Court. Said visitation with mother shall be supervised by another adult. The visitation can be supervised by the paternal grandmother if she is willing to do that for the child and the mother.
 {¶ 25} "IT IS ORDERED that no separate or additional visitation is ordered for the paternal grandmother at this time as the same is not in the best interest of the child.
 {¶ 26} "IT IS FURTHER ORDERED that within 14 days of the filing of this entry, the mother shall submit herself to the Clark County Child Support Enforcement Agency for the establishment of support. For the records of the Child Support Enforcement Agency, mother is Nicole Huffer, a minor child and she resides at 528 South York Street, Springfield, OH.
 {¶ 27} "IT IS FURTHER ORDERED that the custodians shall provide medical insurance for the child if the same is provided to them at a reasonable cost. If medical insurance is not available for the child, the custodians may petition for a medical card through the Clark County Department of Job and Family Services.
 {¶ 28} "IT IS FURTHER ORDERED that the legal custodians, Monte Crawford and Bethla Crawford, shall be entitled to claim the child as an exemption and deduction for tax purposes in calendar year 2002 and continuing each year thereafter.
 {¶ 29} "IT IS FURTHER ORDERED that this judgment entry shall be entered by the clerk in the journal on this date and further served within three days upon all parties not in default for failure to appear." (Docket 87).
 {¶ 30} The appellant's counsel on appeal sets forth the following four assignments of error:
 {¶ 31} "1. It is error to take custody of a small child from a paternal grandmother and transfer it to non-family members after a hearing in which the non-family members have been held to no higher standard of proof or evidentiary burden than the grandmother, where the non-family petitioners presented no evidence to the unsuitability of the grandmother.
 {¶ 32} "2. It is error to grant custody of a small child to non-family members over a paternal grandmother where the court failed to acknowledge any value in the family tie between the child and the grandmother and other kin in her household.
 {¶ 33} "3. It is error to grant custody of a small child to foster parents on such a paucity of evidence as to establish the suggestion that the mere role as foster parents gives petitioners an inside track to custody, even over a paternal grandmother and even with a nearly total lack of evidence against the paternal grandmother and significant evidence in favor of the grandmother.
 {¶ 34} "4. It is error for the trial court to deny a motion to dismiss an action to take custody away from the grandmother when petitioners, having finished their evidence, have not met any burden other than that of their own suitableness."
 {¶ 35} The appellees did not file a brief on this appeal. We find this disturbing and disquieting in that it raises some red flag about either the appellees' commitment to their desire for custody of Shyanna or the competency of their counsel. However, we do not decide custody issues on such questions, but rather what is in the best interest of the child. To that end, we have carefully reviewed the transcript of the proceedings below in order to evaluate the decision of the trial court.
 {¶ 36} We note, first, that a trial court's custody determination that is supported by competent, credible evidence, will not be reversed absent an abuse of discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. The term "abuse of discretion" implies more than an error of law or judgment, it connotes an attitude on the part of the trial court that is arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. With regard to the review of custody matters, the Ohio Supreme Court has stated: "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." (Citations omitted). Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 37} In the appellant's four assignments of error, she is essentially arguing that although she is not a parent of the child, she is still part of the family as the paternal grandmother, and that because of evidence presented as to her own suitability she should almost automatically be granted custody. We find, however, that there is competent, credible evidence in the testimony during the hearing to support the finding by the trial court that the grandmother would not be as appropriate a custodian of the child as the foster parents. For example, the appellant told one witness that she would not be involved in the child's life, but only intended to give the child back to the child's father, who was in prison. (Tr. 100). There was also conflicting evidence about whether the child was appropriately happy in the appellant's home or whether she was happier and more bonded with the Crawfords. (See Tr. 56, 62, 63, 73-77, 89, 91-92, 97, and 151).
 {¶ 38} While we acknowledge the importance of family to a child, as argued by the appellant, we fail to see that it governs the decision in the case at hand. In short, while we find from the transcript of the proceedings that the issue is close, we find that on the whole the decision of the trial court is supported by some competent, credible evidence, and we, therefore, will not reverse it. The assignments of error are overruled, and the judgment is affirmed.
Wolff, J. and William W. Young, J., concur.